**STATE of Missouri, Respondent,**

v.

**William Homer STEGALL, Appellant.**

No. 46912.

Supreme Court of Missouri,
Division No. 1.

Oct. 12, 1959.

Donald C. Littleton, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Richard W. Dahms, Sp. Asst. Atty. Gen., for respondent.

WESTHUES, Judge.

On December 18, 1957, the defendant was found guilty of robbery in the first degree by means of a dangerous and deadly weapon and that he had previously been convicted of a felony. His punishment was fixed at life imprisonment in the State Penitentiary. From the sentence imposed, he has appealed to this court.

Defendant has not questioned the sufficiency of the evidence to sustain the verdict of the jury. Only two points were briefed: The first pertains to the action of the trial court in admonishing the jury, after the jury had had the case under submission for a number of hours, to try to reach a verdict. In the other point briefed, defendant claims that the trial court erred in having a conference with the foreman of the jury out of the hearing of the other jurors and the attorneys for the State and the defense.

The evidence was that on the afternoon of August 22, 1957, at about six o'clock a

robbery was committed at a grocery store located at 1823 McLaran Street, St. Louis, Missouri. In the indictment, it was charged that three men took part in the robbery. They were Donald Lee Beishir, Vincent Gendron, and William Homer Stegall, the appellant in this case. Owen E. Sells, the owner of the grocery store, and his wife were in the store at the time of the robbery. The owner and other witnesses testified that Stegall and Beishir entered the store and with revolvers in hand forced Sells and his wife to go to a back room and lie down on the floor. With the Sellses in that position, one of the men took money from Mr. Sells' person. While this was going on, Gendron entered the store and removed the cash from the register. The total sum taken was $221. At a signal given by Gendron, the defendant and Beishir came from the back room and all three left the store, entered a car driven by another man, and drove away. Some days later, the men were arrested and brought to trial.

The defense was an alibi. The jury evidently did not believe the evidence on the part of the defendant. The State introduced evidence of a number of prior convictions. The defendant admitted these convictions and stated he had been discharged from the State Penitentiary on July 3, only a few weeks prior to the robbery of the Sells' store.

■■ With reference to the complaints briefed by the defendant, the record shows that "at 12:45 p. m., the jury retired to consider their verdict." The record further shows that at 5:45 p. m., the jury was taken to the court room where the defendant and his attorney and also the attorney for the State were present. The following then occurred of which defendant complained:

"The Court: I gather since *you* we haven't heard from you gentlemen that you haven't been able to reach a verdict?

"The Foreman: That is right, your Honor.

"The Court: Mr. Foreman, I have several questions I want to ask you. Will you please be careful and confine yourself to answering the specific question that I ask you. I don't want any elaboration. I just want an answer to what I inquire about. First, is your disagreement about guilt or innocence or is it punishment?

"The Foreman: It is the punishment question.

"The Court: It is the punishment question?

"The Foreman: Yes, sir.

"The Court: How do you stand numerically?

"The Foreman: Eleven to one.

"The Court: How did you stand on your first ballot in connection with the punishment?

"The Foreman: We stood eleven to one on the first ballot—on the second ballot likewise.

"The Court: It has been eleven to one?

"The Foreman: On the first one, no, sir—unanimous on the first ballot.

"The Court: On your first ballot in connection with punishment, how did you stand?

"The Foreman: Eleven to one.

"The Court: How long ago was that?

"The Foreman: I will say about half an hour or an hour ago, not definitely; I didn't look at the time.

"The Court: I think under the circumstances that we will at least let you have some dinner. In a few minutes I will have the bailiffs take you to dinner and return you to the deliberating room after dinner for more deliberation. I might just say to you that of course you gentlemen should reach a verdict if you possibly can. It has taken three days to try this case. That involves the time of a number of people

besides yourselves. It involves not inconsiderable expense to the State of Missouri. If it is at all possible for you to agree you should. You twelve men are just as able to decide this case as any other twelve we would get. In saying this to you I don't mean that anybody should compromise his conscientious beliefs in the matter, but I do mean you should discuss it among yourselves. You should be tolerant of one another's points of view. If you can in all good conscience—all of you—agree on a verdict that is what you should do.

"Again I am asking you while you are gone from the building not to discuss the matter. Reserve any further discussion until the bailiffs bring you back after dinner.

"Now, Mr. Bailiff, you can make arrangements in the waiting room for any of these gentlemen who want to notify their families where they are and why they are still here, that they may do so; then as soon as that is completed take them to dinner; then as soon as that is completed return them to the deliberating room for further deliberations.

"(At this time as the defendant was leaving the court-room in the company of the bailiffs, the Foreman of the jury came to the bench and spoke to the Court out of the hearing of the Court Reporter.)

"(At this time, at 5:50 p. m., the jury were then dismissed for the evening meal.)"

No objection was made by the defendant until 8:25 p. m., when the trial judge returned to his chambers. We will not rule whether timely objection was made but instead will rule the question on the merits. We do not find in the remarks made by the trial judge any statement that would prejudice the rights of the defendant. We have had before us similar situations in other cases. In State v. Roberts, Mo., 272 S.W.2d 190, we reviewed this question and held that the remarks of the trial judge in that case, similar to those of the trial judge in the case before us, were proper. We there cited a number of cases and also 85 A.L.R. 1427 and 109 A.L.R. Annotations, beginning at page 72, to the effect that the general rule is that trial judges "may detail to the jury the ills attendant on a disagreement." 272 S.W.2d loc. cit. 192 (2). We are satisfied that such a rule does not prejudice the rights of a defendant unless the remarks made by the trial judge amount to coercion. For a further discussion of this question, see State v. Baker, Mo., 293 S.W.2d 900, loc. cit. 905, 906(4, 5), where we held that to constitute error, it must appear that the remarks of the trial judge amounted to coercion. Such was the ruling in State v. Nelson, 181 Mo. 340, 80 S.W. 947, cited by the defendant. The point is ruled against the defendant.

■■ There is no merit in the other assignment of error wherein defendant complained because, as he says, the trial judge had a private conference with the foreman of the jury. At the time defendant called this matter to the attention of the trial court, the judge replied as follows:

"The Court: Let the record show that as the Court was about to leave the bench the Foreman approached the bench and inquired of the Court if he could further explain the instructions, stating to the Court that the matter that was concerning the jury was what he called the Second Verdict Form. The Court informed the Foreman that he could make no explanations other than those contained in the instructions. It is true that at the time the Foreman approached the Bench *the bench* the defendant had been taken from the court room by the bailiffs for the purpose of putting him in the cage. The jurors were still in the court room, awaiting the return of the bailiffs to take them to the deliberating

room, preparatory to going to dinner. Both counsel were in the courtroom and neither came to the bench as the foreman came over from the jury box. With those statements the objections of the defendant will be overruled."

The defendant does not contend that anything occurred in addition to what the court said. It is evident that the court did not err in advising the foreman as he did. State v. McGlade, 165 Kan. 425, 196 P.2d 173, loc. cit. 176(7). It is the rule that private conversation or communications between a juror and the trial judge should not occur. Lloyd v. St. Louis Public Service Company, 360 Mo. 91, 227 S.W. 2d 460, loc. cit. 461, 462(2, 3). However, as the record shows, no such thing occurred in this case.

We have examined matters of record and do not find error therein.

The judgment is affirmed.

All concur.